IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| RENEE JENNINGS, *et al.*, | * |
| Plaintiffs, | * |
| v. | *      CIVIL NO.: WDQ-13-2164 |
| HOUSING AUTHORITY OF | * |
| BALTIMORE CITY, *et al.*, | * |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Renee Jennings[1] sued the Housing Authority of Baltimore City ("Housing Authority")[2] for illegally terminating her participation in the Housing Authority's voucher program.  ECF No. 2.  Pending are the parties' cross motions for summary judgment, the Plaintiffs' motion to file a surreply, and the Housing Authority's motion to strike.  No hearing is necessary. Local Rule 105.6 (D. Md. 2014).  For the following reasons, the Housing Authority's motion for summary judgment and the

---

[1] Jennings sued individually and as mother and next friend of her minor son, "DC."  *See* ECF No. 2 at 1, 8.  Jennings's daughter, Tyniquia Jones, who is not a minor, is also a named Plaintiff. *See id.*

[2] The Housing Authority is allegedly "a body corporate and politic and a political subdivision of the State of Maryland." ECF No. 2 ¶ 4.  The Plaintiffs also sued Paul T. Graziano, Chief Executive of the Housing Authority, and Reginald Scriber, Deputy Commissioner for the Housing Authority.  *Id.*  The Court granted Graziano and Scriber's motion to dismiss on January 29, 2014. ECF No. 21.

Plaintiffs' motion to file a surreply will be granted; the Housing Authority's motion to strike and the Plaintiffs' motion for summary judgment will be denied.

I.  Background[3]

The Housing Authority administers the federally funded Section 8 Housing Choice Voucher ("HCV") program, which provides rent subsidies to low-income tenants in Baltimore City.  *See* ECF No. 33, Ex. 1 ¶¶ 2-4; Ex. 1A.  The program permits the Housing Authority to terminate participants in the program if they violate "family obligations."  24 C.F.R. § 982.551.  Under federal regulations, "the members of the [Section 8] household may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises."  24 C.F.R. § 982.551(l).  Chapter 15 of the Housing Authority's Administrative Plan[4] further states:

---

[3] In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  When cross motions for summary judgment are filed, "the facts relevant to each [cross motion] must be reviewed in the light most favorable to the nonmovant."[3] *Mellen*, 327 F.3d at 363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

[4] The Housing Authority promulgated its Adminstrative Plan in accordance with 42 U.S.C. § 1437 and 24 C.F.R. § 982.54 ("The [Public Housing Agency ("PHA")] must adopt a written

> Assistance will be terminated for participants who have been arrested [or] convicted . . . for drug-related criminal activity, violent criminal activity or other serious criminal activity during participation in the program and within the last three (3) years prior to the date of the notice to terminate assistance. . . .
>
> If any member of the household violates the family obligations by engaging in drug-related criminal activity, violent criminal activity or other serious criminal activity, the [Housing Authority] will terminate assistance.
>
> In appropriate cases, the [Housing Authority] may permit the family to continue receiving assistance provided that family members determined to have engaged in the proscribed activities will not reside in the unit . . . .

*See* Housing Authority of Baltimore City's Administrative Plan § 15-6, 15-7.

Jennings and her family have been part of the HCV program since 2003. *See* ECF No. 33, Ex. 1B. Between October 2008 and December 2011, the Housing Authority subsidized Jennings's rent at 900 Allendale Street. *See* ECF No. 33, Ex. 1B; Ex. 1J. On her Housing Assistance Payments ("HAP") Contract for the Allendale address, Jennings listed her household members as James Barrett, Jr. (son), Tyniquia Jones (daughter), and Donald Cassall, III (son). *See* ECF No. 33, Ex. 1J. When she recertified for the program in 2008 and 2009, Jennings included

---

administrative plan that establishes local policies for administration of the program in accordance with HUD requirements.").

Barrett on her personal declaration form.  *See* ECF No. 33, Ex. 1C.

On February 21, 2010, Barrett was arrested and charged with the assault on Erika Wilson at 800 Allendale Street.  *See* ECF No. 31, Ex. F.  On April 7, 2010, Barrett was arrested and charged with possession of marijuana near the family's home. *See id.*  On June 12, 2010, Barrett was arrested and charged with assaulting Jennings in their home.  *See id.*  All charges were later *nolle prossed*.  *See* ECF No. 31, Ex. J.

In October 2011, Jennings applied for a new HCV voucher so the family could move to a new address.[5]  *See* ECF No. 31, Ex. A. On October 7, 2011, Jennings signed the new voucher which reminded Jennings of the family obligations under the program, including the requirements that the family "[p]romptly notify the [Housing Authority] in writing if any family member no

---

[5] The Plaintiffs assert that the family moved because "from about August 2011 to January 6, 2012 [they were] in the Witness Protection [R]elocation [P]rogram . . . ."  ECF No. 32-1 at 4. The Plaintiffs do not cite any exhibits in support of this assertion.  *See id.*  The only exhibit attached to their motion for summary judgment that mentions witness relocation is an email from Gwen Davis to Corliss Alston and Melissa Bacon on June 13, 2012.  *See* ECF No. 31, Ex. H.  The Plaintiffs do not identify these individuals or state why the email was sent. Without any background, this email is inadmissible hearsay and inappropriate for the Court to consider on a motion for summary judgment.  Further, from the contents of the email, it appears that Davis was only summarizing information provided by Jennings rather than stating facts in her personal knowledge.  *See id.* Even if the Court were to consider this email, it would not alter the Court's decision on these motions.

longer lives in the unit," and that "[a]ny information the family supplies must be true and complete."  *See id*. at 1-2.

On November 18, 2011, Barrett was detained pending trial on an attempted murder charge.  *See* ECF No. 31, Ex. C.  Barrett was later convicted and sentenced to 60 years in prison.  *See id*.

On December 19, 2011, Jennings filed a new Family Status Composition Form during her HCV recertification.  *See* ECF No. 33, Ex. 1C.  Jennings listed Barrett as a member of her household and stated that her family status had not changed.  *See id*.  The Housing Authority used Barrett to calculate the family income for the new voucher, and issued a voucher for a four-bedroom apartment because Jennings had a four-person family.  *See* ECF No. 33, Exs. 1E, 1K.  On the federal housing report, Barrett is included as "Member number 02" of the "MTW Household."[6]  *See* ECF No. 33, Ex. 1K.

On January 6, 2012, Jennings entered into a lease agreement with Dominion Properties, LLC ("Dominion") for a residence at 3407 Royston Avenue.[7]  *See* ECF No. 31, Ex. B.  On January 9,

---

[6] MTW stands for "Moving to Work."  *See* U.S. Dept. of Housing and Urban Dev., *MTW Family Report*, at 1-2, *available at* http://www.hud.gov/offices/adm/hudclips/forms/files/50080mtw.pdf.

[7] On the version of the lease supplied by the Plaintiffs, Barrett is listed as one of the occupants of the apartment, but his name is crossed out.  *See* ECF No. 31, Ex. B.  The Housing Authority asserts that on its copy, Barrett's name was crossed out, but then the information was written back on the lease and initialed.  ECF No. 32-1 at 5.  Although the parties dispute

2012, the Housing Authority entered into an HCV contract with Dominion to subsidize Jennings's rent.[8]  *See* ECF No. 33, Ex. 1F.

On May 4, 2012, the Housing Authority sent Jennings a Notice to Terminate Housing Assistance Payments.  ECF No. 31, Ex. F.  The notice informed Jennings that the Housing Authority had "[r]ecently . . . received police reports from the Baltimore City Police Department" about the three incidents with Barrett in 2010.  *See id*.  Because the police reports showed a drug-related crime and crimes of violence, the Housing Authority was terminating the Jennings family from the program effective June 5, 2012 for violating family obligations.  *See id*.  On May 5, 2012, Jennings requested an informal hearing about the termination.[9]  ECF No. 31, Ex. G.

---

whether Jennings knowingly included Barrett in the new lease, as well as when and how the alterations to the lease were made, these are not material facts that bar summary judgment because they do not alter the Court's ultimate decision.

[8] The contract listed Barrett as a household member.  *See* ECF No. 33, Ex. 1F.  However, Jennings was not present at the meeting between the Housing Authority and Dominion, and there is no evidence that Jennings ever saw the contract containing Barrett's name.

[9] Federal regulations guarantee a Section 8 housing participant an informal hearing about termination upon the participant's request.  24 C.F.R. § 982.555.  "The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing."  24 C.F.R. § 982.555(e)(6).

On May 29, 2012, an informal hearing was held before Serena Campbell. *See* ECF No. 31, Ex. K.  The Housing Authority presented evidence including its version of the lease with Dominion, Jennings's personal declarations including Barrett as a household member, and the police reports of the 2010 incidents. *See* ECF No. 31, Exs. J, K.  Jennings and her sister testified that Barrett was not guilty of any of the 2010 incidents, and he was being framed on the murder charge. *See id.*  Jennings stated that Barrett had never lived at the Royston Avenue address because of his incarceration, but "she will continue to support her son and always allow him a place to stay in her home." *See id.*  In her notes during the hearing, Campbell determined that Barrett did live at the Royston Avenue address within the meaning of the family obligations statutes because Barrett's name was on the lease, and Jennings included Barrett in all her personal declarations. *See* ECF No. 31, Ex. J.

On June 7, 2012, Campbell sent her final determination to Jennings. *See* ECF No. 31, Ex. K.  Campbell upheld the termination of benefits, finding that "the [Housing Authority] ha[d] shown by a preponderance of the evidence that James Barrett, approved household member and son of Renee Jennings, was arrested in 2010 for the following charges; . . . common assault, . . . [a] CDS violation, and . . . common assault."

7

*See id.*  Campbell also considered Jennings's "testimony during the hearing, that James Barrett has currently been charged and arrested [for] attempted murder and has been incarcerated since January 2012[,] along with her decision to allow [] Barrett to remain a household member." *Id.*  Jennings did not appeal this determination.

On July 16, 2013, the Plaintiffs filed suit in the Circuit Court for Baltimore City alleging that the Defendants had: (1) illegally terminated assistance to a victim of domestic violence, in violation of the Housing Authority's Administrative Plan (the "Administrative Plan") and the Fair Housing Act ("FHA"),[10] and (2) engaged in a "conspiracy" to terminate assistance based on "non-actionable conduct and unauthorized grounds."[11]  ECF No. 2.  On July 26, 2013, the Defendants removed to this Court on the basis of federal question jurisdiction. ECF No. 1.

---

[10] 42 U.S.C. § 3601 *et seq.* (1968).

[11] The Plaintiffs alleged that the Housing Authority could not base its termination decision on the actions of Barrett, because he does not qualify as a "family member[]" bound by the "Family obligations clause of the Section 8 [HCV] Program contract for" the Royston Home, and that the Housing Authority "conspired" to terminate her assistance by altering her lease with Dominion. *See* ECF No. 2 ¶¶ 45-46.  The complaint contains four other claims; however, the Court dismissed these claims on January 29, 2014.  ECF No. 21.

On August 11, 2014, the Plaintiffs moved for summary judgment.  ECF No. 30.[12]  On August 28, 2014, the Housing Authority filed a cross motion for summary judgment.  ECF No. 33.  On September 16, 2014, the Plaintiffs replied.  ECF No. 35. On October 10, 2014, the Housing Authority filed its reply, including a motion to strike the Plaintiffs' reply.  ECF No. 38. On October 17, 2014, the Plaintiffs moved for leave to file a surreply.  ECF No. 39.

II.   Analysis

   A. The Plaintiffs' Motion to File a Surreply

      Unless otherwise ordered by the Court, a party generally may not file a surreply.  Local Rule 105.2(a).  Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented for the first time in the opposing party's reply.  *Khoury* v. *Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

      In its reply, the Housing Authority argues that the Court should strike the Plaintiffs' reply because it was filed late, and asserts that the Plaintiffs did not properly serve the

---

[12] On August 12, 2014, the Plaintiffs filed an emergency motion for leave to file a proper document.  ECF No. 32.  The Plaintiffs informed the Court that the wrong memorandum was attached to their original motion for summary judgment and supplied the Court with a correct copy.  *Id.*  Accordingly, the Court will grant the motion to file a proper document and consider ECF No. 32-1 as the Plaintiffs' memorandum in support of summary judgment.

reply, and purposefully withheld it from the Housing Authority.
ECF No. 38.  Accordingly, the Court will grant the Plaintiffs'
motion to file a surreply so that they may respond to the
Housing Authority's allegations.

B. The Housing Authority's Motion to Strike

The Housing Authority moves to strike the Plaintiffs' reply
as untimely because it "was due on or before 11:59 pm on
September 15, 2014, [but] [the] Plaintiffs did not file until
1:42 am on September 16, 2014.  ECF No. 38 at 1.  Further,
because the Plaintiffs filed under seal, the Housing Authority
did not have electronic access to the reply.  *Id*. at 2.  The
Housing Authority contends that the Plaintiffs never sent a
paper copy and refused to send an electronic copy until four
days before the Housing Authority's reply was due.  *See id*. at
2-3.  The Plaintiffs assert that they sent a paper copy of the
reply, that they supplemented the paper copy with an electronic
copy as soon as their counsel was able, and that they offered to
file a joint motion for extension of time for the Housing
Authority to file its reply which was refused.[13]  ECF No. 39.

Local Rule 105.2(a) requires that "all memoranda in
opposition to a motion shall be filed within fourteen days of
the service of the motion.  "If service is by mail or electronic

_____

[13] In their surreply, the Plaintiffs do not address why their
reply was filed late.  *See* ECF No. 39.

means, Fed. R. Civ. P. 6(e) permits the respondent an additional three days.  However, "Local Rule 105.2(a) does not provide the consequence for a failure to meet the prescribed deadline. Thus, the district court, in its discretion, may decide whether to consider an untimely opposition."  *Curtis v. Evans*, No. DKC 2003-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004).

The Court will deny the motion to strike.  The Housing Authority fails to show how a delay of a few hours in the middle of the night prejudiced it to such a degree that the Court should not consider the Plaintiffs' filing.  The Court need not determine who was at fault for the delay in the Housing Authority receiving the reply because the Plaintiffs' counsel offered a consent motion giving the Housing Authority an additional 15 days to respond, which the Housing Authority did not accept.  *See* ECF No. 39 at 7-8.  Further, the Housing Authority completed its reply in four days; the Court sees no prejudice.

C. The Cross Motions for Summary Judgment

1. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

11

Civ. P. 56(a).[14]   In considering the motion, the judge's function

is "not . . . to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986).   A dispute about a material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most

favorable to . . . the nonmovant and draw all reasonable

inferences in [its] favor," *Dennis v. Columbia Colleton Med.*

*Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court

must abide by the "affirmative obligation of the trial judge to

prevent factually unsupported claims and defenses from

proceeding to trial," *Bouchat v. Balt. Ravens Football Club,*

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal

quotation marks omitted).

When cross motions for summary judgment are filed, "the

facts relevant to each [cross motion] must be reviewed in the

light most favorable to the nonmovant."[15]   *Mellen*, 327 F.3d at

---

[14] Rule 56(a), which "carries forward the summary-judgment stan-
dard expressed in former subdivision (c)," changed "genuine
'issue' [to] genuine 'dispute,'" and restored the word "'shall'
. . . to express the direction to grant summary judgment."   Fed.
R. Civ. P. 56 advisory committee's note.

[15] In this case, the parties have established independently that
there are no material facts in dispute.   The parties' sole

363 (*citing Rossignol v. Voohaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

   2. Count I: Discriminating Against a Victim of Domestic
      Violence

In Count I of the complaint, the Plaintiffs assert Jennings "had a right to be free from termination of assistance based in whole or in part on . . . Jennings status as a victim of domestic violence under the [FHA] and [the Housing Authority's] Administrative Plan." ECF No. 2 at ¶ 34. Specifically, the Plaintiffs object to the Housing Authority "citing a 2010 incident of domestic violence of which [] Jennings was a victim." *Id.* at ¶ 35.

The Violence Against Women Act ("VAWA") states:

> An incident or incidents of actual or threatened domestic violence, dating violence, or stalking will not be construed as a serious or repeated lease violation by the victim or threatened victim of the domestic violence, dating violence, or stalking, or as good cause to terminate the tenancy of, occupancy rights of, or assistance to the victim.

> . . . . Criminal activity directly related to domestic violence, dating violence, or stalking, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, shall not be cause for termination of tenancy of, occupancy rights of, or assistance to the victim, if the tenant or immediate family member of the tenant is the victim.

---

argument are matters of legal interpretation: 1) did the Housing Authority terminate assistance based on the domestic violence incident, and 2) was Barrett a "household member" of the Royston address.

24 C.F.R. § 5.2005(c); 42 U.S.C. § 1437, *et seq.*  Federal

Section 8 housing regulations and the Housing Authority's

Administrative Plan incorporate the VAWA's protections.  *See* 24

C.F.R. §§ 982.551(e), 982,552(c)(2)(v); Housing Authority's

Administrative Plan §§ 11-32, 15-7.

In the termination letter and during the hearing, the

Housing Authority cited the June 12, 2010 assault of Jennings by

Barrett as one of the grounds for termination.  *See* ECF No. 31,

Exs. F, J.  This was an incident of domestic violence that was

inappropriate for consideration under 24 C.F.R. § 5.2005(c).

Had this been the only ground for the termination of assistance,

the Plaintiffs would be entitled to relief.  However, that is

not the case.

The hearing officer found by a preponderance of the

evidence that Barrett committed three different criminal acts.

*See* ECF No. 31, Ex. J.  Two of these acts had nothing to do with

domestic violence.  *See id.*; 24 C.F.R. § 5.2005(d)(1) ("Nothing

. . . limits the authority of the PHA, owner, or management

agent to evict a tenant or terminate assistance for a lease

violation unrelated to domestic violence, dating violence, or

stalking, provided that the PHA, owner, or management agent does

not subject such a tenant to a more demanding standard than

other tenants in making the determination whether to evict, or

to terminate assistance or occupancy rights.").  The hearing

14

officer specifically noted that _each_ was a violation of the Administrative Plan.[16]  _See_ ECF No. 31, Ex. J.  Further, the hearing officer found (based on Jennings's testimony) that Barrett was currently charged with attempted murder.  _See id._

Even considered in the light most favorable to the Plaintiffs, the evidence provides no basis for a reasonable juror to conclude that but-for consideration of the domestic violence incident, HCV assistance would not have been terminated.  Although the Housing Authority violated its Administrative Plan, the Plaintiffs are not entitled to relief.

Further, the Plaintiffs have failed to show a claim under the FHA.  The FHA protects from discrimination tenants who are members of a protected class.  A plaintiff may show discrimination within the meaning of the FHA either through evidence of discriminatory intent or discriminatory impact. _Boardley v. Household Fin. Corp. III_, No. PWG-12-3009, 2014 WL 4080169, at *16 (D. Md. Aug. 14. 2014).  "A cause of action based upon disparate impact arises where facially neutral rules or policies are applied in a way that affects the protected

---

[16] "I find that the [Housing Authority has shown by a preponderance of the evidence that James Barrett, approved household member and son of Renee Jennings, was arrested in 2010 for the following charges; on 2/21/2010 for Common Assault. On 4/7/2010 for [a] CDS Violation, and on 6/12/2010 for Common Assault. . . .  _These are violations of part 15 Section C of the Administrative Plan._"  _See_ ECF No. 31, Ex. J.

class differently from other groups." *Bryant Woods Inn, Inc. v. Howard Cnty*, 911 F. Supp. 918, 939 (D. Md. 1996).

In the complaint, the Plaintiffs do not state Jennings's protected class that entitles her to FHA protection. *See* ECF No. 2 at ¶¶ 31-39.  Nor did they state her protected class in response to the Housing Authority's interrogatories. *See* ECF No. 33, Ex. 2.  In their motion for summary judgment, for the first time, the Plaintiffs assert that the Housing Authority violated the FHA because it used a domestic violence incident in terminating assistance when women are more likely to be victims of domestic violence than males, and African American women have higher rates of victimization than whites.  ECF No. 32-1 at 14-15.  The Plaintiffs cite a single study by the National Crime Victimization Survey to support their FHA claim. *Id.*

Even if the Court were to consider this single survey sufficient to show the disparity between genders and races in domestic violence victimization, there is still insufficient evidence to survive summary judgment.  The Plaintiffs have not established, nor do they argue, that the Housing Authority has a policy or practice of considering domestic violence incidents in terminating housing.  In fact, although it violated the provision in this instance, the Housing Authority has the opposite policy.  "[D]iscriminatory impact cannot be established when you have just one isolated decision." *Coe v. Yellow*

16

*Freight System, Inc.,* 646 F.2d 444, 451 (10th Cir. 1981); *Reidt v. County of Trempealeau,* 975 F.2d 1336, 1341 (7th Cir. 1992); *Bryant Woods Inn, Inc.*, 911 F. Supp. at 939.  Accordingly, even when considering all the facts in the Plaintiffs' favor, the evidence does not support an FHA claim.

> 3. Count II: Conspiracy to Terminate the Plaintiffs' Rights on Unauthorized Grounds

Like Count I of the complaint, Count II actually contains two separate claims for relief.  First, that the Housing Authority engaged in a "conspiracy" in terminating Jennings from the HCV program; and, second, the Housing Authority terminated assistance "based on non-actionable conduct and unauthorized grounds."  ECF No. 2 at ¶¶ 40-51.

No evidence in the record supports a civil conspiracy claim.  In interrogatories, the Housing Authority asked the Plaintiffs who else "acted in such a manner as to cause or contribute to the occurrence or to the matters alleged in [the] Complaint."  ECF No. 33, Ex. 1L at 11.  The Plaintiffs responded that they "do not contend [that] any other person other than [the] [D]efendants acted in a manner to cause or contribute [to] the illegal termination of [the] [P]laintiffs from the housing voucher program as articulated in [C]ount I and [C]ount II of [the] [P]laintiffs' complaint."  *Id*.  At the time of this response, the only defendants in the action were the Housing

17

Authority and its employees.  *See* ECF No. 21 (granting motion to dismiss the complaint against Housing Authority employees).  The Plaintiffs have alleged no agreement that is the basis of their conspiracy claim, and it is well settled that an entity cannot conspire with itself.  *See Facey v. Dae Sung Corp.*, 992 F. Supp. 2d 536, 542 (D. Md. 2014); *Lewin v. Cooke,* 95 F. Supp. 2d 513, 524-25 (E.D. Va. 2000).

The Plaintiffs' other allegation also fails.  The Plaintiffs allege that the Housing Authority violated its Administrative Plan because Barrett was not a household member bound by the "Family obligations clause of the Section 8 [HCV] Program contract" because he never lived at the Royston Avenue address.  *See* ECF No. 2 ¶¶ 45-46; ECF No. 32-1 at 17-19.  The Plaintiffs assert that the hearing officer was required to make a finding that Barrett physically lived at the home in order to terminate benefits.[17]  *See* ECF No. 32-1 at 17-19.  The Housing

---

[17] In support of their argument, the Plaintiffs rely on *Matthews v. Housing Authority of Balt. Cty.*, 88 A.3d 852 (Md. Ct. Spec. App. 2014).  The *Matthews* court was reviewing the Housing Authority's visitor policy to determine when a visitor becomes an unauthorized household member in violation of family obligations.  *Id.* at 859.  The court found that the hearing officer erred when he did not make a factual determination that the unauthorized person actually lived at the address because the visitor policy stated that someone is authorized when she "use[s] [] the unit address . . . ." for a period exceeding 14 consecutive days.  *Id.*  Basing its determination on the word "use," the court held that physical presence at the residence was necessary.  *Id.*  The *Matthews* decision has no bearing on this case because the visitor policy is not involved, and the

Authority asserts that Barrett was a household member within the meaning of the statute regardless of whether he ever set foot within the Royston Avenue home because he was an approved household member on Jennings's paperwork as late as December 2011, she was given a four bedroom home, and she never informed the Housing Authority in writing that Barrett was no longer a family member.  ECF No. 33-1 at 10-12.

The Court need not determine whether Barrett was a "household member" at the Royston address.[18]  It is undisputed that Barrett was a household member at 900 Allendale Street, and that the assault on Erika Wilson and possession of marijuana charges occurred while Barrett lived at this address.  *See* ECF No. 31 at Exs. F, J.  The Housing Authority's Administrative Plan states:

> Assistance will be terminated for participants who have been arrested [or] convicted . . . for drug-related criminal activity, violent criminal activity or other serious criminal activity *during participation in the program and within the last three (3) years prior to the date of the notice to terminate assistance.* . . .

> If any member of the household violates the family obligations by engaging in drug-related criminal activity, violent criminal activity or other

---

definition of "household member" and "family member" do not contain the "use" language.  *See* 24 C.F.R. §§ 5.100, 982.5.

[18] Having found no authority defining "household member" in this context, the Court will not attempt to create a definition when the parties' motions may be decided on other grounds.

serious criminal activity, the [Housing Authority] will terminate assistance.

In appropriate cases, the [Housing Authority] may permit the family to continue receiving assistance provided that family members determined to have engaged in the proscribed activities will not reside in the unit . . . .

See Housing Authority of Baltimore City's Administrative Plan §§ 15-6, 15-7.[19] Thus, it is clear that Barrett violated the family obligations provisions while he was a member of the household at the Allendale address.

The Plaintiffs seem to argue that because they moved to a new home in which Barrett did not live before the Housing Authority sent the termination notice, the Housing Authority could no longer pursue the violations. See ECF No. 32-1 at 17-19. Under this interpretation, a household member could violate the law and be imprisoned; knowing that their family member had violated the HCV conditions, the rest of the family could apply for a new voucher and move to a new address before the Housing

---

[19] In reviewing the findings of an informal hearing under Section 8, the Fourth Circuit held that "to insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence." Clark v. Alexander, 85 F.3d 146, 152 (4th Cir. 1996). A court must also give deference to a housing authority's interpretation of Section 8 provisions in "a two-step analysis." Id. "First, the court should determine whether the state agency action is inconsistent with the federal housing provisions. If there is no inconsistency, the court should afford the state agency's action reasonable deference, meaning that the action should be upheld unless it is found to be arbitrary or capricious." Id. (citations omitted).

Authority discovered the violation.  Under the Plaintiffs'
interpretation of the statute, the Housing Authority would be
without recourse.

The Administrative Plan states that the Housing Authority
may consider any activity within three-years of the termination
letter.  *See* Housing Authority of Baltimore City's
Administrative Plan §§ 15-6, 15-7.  Further, Jennings could have
argued at the informal hearing that "the [Housing Authority]
[should] permit the family to continue receiving assistance"
because the "family member[] determined to have engaged in the
proscribed activities [did] not reside in the unit . . . ."  *See*
*id*.  Instead, Jennings asserted that Barrett had not committed
the alleged offenses, and stated that she would "always allow
him a place to stay in her home."  ECF No. 31, Ex. J.

The undisputed facts establish that Barrett violated the
provisions of the housing agreement while living at the
Allendale Street home as a member of a Section 8 participating
family.  The Housing Authority was within its rights to
terminate assistance for Barrett's conduct while living at
Allendale Street.

III. Conclusion

For the reasons stated above, the Housing Authority's motion for summary judgment and the Plaintiffs' motion to file a surreply will be granted; the Housing Authority's motion to strike and the Plaintiffs' motion for summary judgment will be denied.

_____3/10/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge